# CHRIS DANIEL
## HARRIS COUNTY DISTRICT CLERK

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

2/5/2015 10:57:50 AM

CHRISTOPHER A. PRINE
Clerk

**DATE 02-04-15**

## NOTICE OF APPEALS
### ASSIGNMENT OF COURT THE COURT OF APPEALS

**TO:        14TH  COURT OF APPEALS**

**From:        Deputy Clerk: PHYLLIS WASHINGTON**
Chris Daniel, District Clerk
Harris County, T E X A S

**CAUSE:    2012-21132**

**VOLUME _____    PAGE _____    OR    IMAGE # 63290905**

**DUE   03-19-15                    ATTORNEY TBN #13892950**

**NOTICE OF APPEAL HAS BEEN ASSIGNED TO THE 14TH**

**DATE ORDER SIGNED:    11-19-14**

**MOTION FOR NEW TRIAL/REQUEST FOR FINDINGS OF FACT DATE FILED   12-19-14**

**REQUEST TRANSCRIPT DATE FILED        02-04-15**

**NOTICE OF APPEAL DATE FILED            02-03-15**

**NUMBER OF DAYS: ( CLERKS RECORD )    120 -POST JUDGMENT MOTION FILED**

**FILE ORDERED:   YES ☐   NO ☒   IMAGED FILED:   YES ☒   NO ☐**

**CODES FOR NOTICE OF APPEAL:  BC , C, O**

CHRIS DANIEL
Harris County, District Clerk

By:  /s/PHYLLIS WASHINGTON
**PHYLLIS WASHINGTON, Deputy**

| | |
|---|---|
| **BC** | **NOTICE OF APPEAL FILED** |
| **BG** | **NOTICE OF APPEAL FILED – GOVERNMENT** |
| **C** | **JUDGMENT BEING APPEALED** |
| **D -** | **ACCELERATED APPEAL** |
| **OA** | **NO CLERK'S RECORD REQUEST FILED** |
| **O** | **CLERK'S RECORD REQUEST FILED (W/NOTICE OF APPEAL )** |
| **NA** | **AMENDED NOTICE OF APPEAL** |

CAUSE NO. 2012-21132

| | | |
|---|---|---|
| CHRISTOPHER AINSWORTH AND DANIELLE AINSWORTH | § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § § | HARRIS COUNTY, TEXAS |
| HEWLETT-PACKARD COMPANY | § § § | |
| Defendant | § | 270TH JUDICIAL DISTRICT |

## HEWLETT-PACKARD COMPANY'S NOTICE OF APPEAL

Defendant, Hewlett-Packard Company, desires to appeal the final judgment signed by the Court on November 19, 2014. Hewlett-Packard Company appeals to either the First or the Fourteenth Court of Appeals.

Respectfully submitted,

HEARD & MEDACK, P.C.

By: /s/ David W. Medack
David W. Medack
Texas Bar No. 13892950
Email: dmedack@heardmedackpc.com
Mary L. Graham
Texas Bar No. 24007260
Email: mgraham@heardmedackpc.com
9494 Southwest Freeway, Suite 700
Houston, Texas 77074
(713) 772-6400 - Telephone
(713) 772-6495 - Facsimile
ATTORNEYS FOR DEFENDANT
HEWLETT-PACKARD COMPANY

# CERTIFICATE OF SERVICE

Pursuant to Rule 21a of the Texas Rules of Civil Procedure, I hereby certify that a true and correct copy of the foregoing has been served upon all known counsel of record, by facsimile, hand delivery, U.S. First Class Mail and/or certified mail, return receipt requested, on this the 3rd day of February, 2015.

**Via Fax: (713) 864-4671**
Ryan T. Hand
Lorance & Thompson, P.C.
2900 North Loop West, Suite 500
Houston, Texas 77092
Email: rth@lorancethompson.com


**Via Fax: (512) 322-8363**
Hon. Thomas R. Phillips
Ashley Allen Carr
Maddy R. Dwertman
BAKER BOTTS LLP
98 San Jacinto Boulevard Suite 1500
Austin, Texas 78701
Email: tom.phillips@bakerbotts.com
Email: ashley.carr@bakerbotts.com
Email: maddy.dwertman@bakerbotts.com


*/s/ David W. Medack*
David W. Medack

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

NO. 2012-21132

| | | |
|---|---|---|
| CHRISTOPHER AINSWORTH AND DANIELLE AINSWORTH | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs | § | |
| vs. | § § | HARRIS COUNTY, TEXAS |
| HEWLETT-PACKARD COMPANY | § § | |
| Defendant. | § | 270th JUDICIAL DISTRICT |

## FINAL JUDGMENT

On September 15, 2014, this Court called the above-styled and referenced suit to trial. Attorneys for Plaintiffs, Christopher Ainsworth and Danielle Ainsworth, and Defendant, Hewlett-Packard Company, announced ready. Plaintiffs, Christopher Ainsworth and Danielle Ainsworth, and Defendant, Hewlett-Packard Company, appeared in person.

A jury composed of 12 members was duly tested and selected, impaneled, and sworn. The trial of the cause proceeded with the introduction of evidence. Upon completion of the evidence on behalf of all parties, the parties rested and the Court prepared its Charge and the case was submitted to the jury. Having duly retired and deliberated, the jury reached a verdict herein, which verdict was returned in open court as provided by law.

The original Charge and unanimous verdict of the jury was received and filed in this cause and is hereby incorporated herein and made a part hereof by reference for all intents and purposes. Thereafter, counsel for the Plaintiffs moved that the verdict be accepted, and the verdict was accepted by the Court and entered as the verdict of the jury.

After receiving the verdict and considering the pleadings, evidence and testimony, the Court hereby renders judgment for Plaintiff, Christopher Ainsworth.

556755 1 PLD 0002492 8437 RTH

Accordingly, the Court orders that Plaintiff, Christopher Ainsworth, recover the following from Defendant:

a. Actual damages in the amount of $7,597,698.91

b. Prejudgment interest awarded on actual damages sustained in the past at the rate of 5% from April 11, 2012, until the date of this judgment, in the amount of $285,611.90.

c. Court costs.

d. Postjudgment interest on all of the above at the rate of 5%, compounded annually, from the date this judgment is entered until all amounts are paid in full.

This judgment fully and finally disposes of all claims and all parties.

The Court orders execution to issue for this judgment.

SIGNED this ___19___ day of ___November___, 2014.

_____
JUDGE PRESIDING

556755 1 PLD 0002492 8437 RTH

APPROVED·

**LORANCE & THOMPSON, P.C.**

_____

Ryan T. Hand
SBN: 24012777
Email: rth@lorancethompson com
Larry D. Thompson
SBN: 19930000
Email: ldt@lorancethompson.com
2900 North Loop West, Suite 500
Houston, Texas 77092
Telephone: (713) 868-5560
Facsimile· (713) 864-4671
**Attorney for Plaintiffs,**
**Christopher Ainsworth and Danielle Ainsworth**

CAUSE NO. 2012-21132

| | | |
|---|---|---|
| CHRISTOPHER AINSWORTH AND DANIELLE AINSWORTH | § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § § | HARRIS COUNTY, TEXAS |
| HEWLETT-PACKARD COMPANY | § § § | |
| Defendant | § | 270TH JUDICIAL DISTRICT |

## MOTION FOR NEW TRIAL AND, IN THE ALTERNATIVE, MOTION FOR REMITTITUR

Defendant Hewlett-Packard Company ("HP") files this Motion for New Trial pursuant to Texas Rule of Civil Procedure 320, and, in the alternative, files a Motion for Remittitur.

### I. THE COURT'S JUDGMENT

On November 19, 2014, The Court entered judgment that Mr. Ainsworth recover:

(A)    Actual damages in the amount of $7,597,698.91;

(B)    Pre-judgment interest awarded on actual damages sustained in the past in the amount of $285,611.90;

(C)    Courts costs; and

(D)    Post-judgment interest on all of the above at 5% compounded annually, from the date the judgment is entered until all amounts are paid in full.

## II. THE JURY'S FINDINGS

The Court submitted a general negligence theory to the jury in 5 questions:

- *The Ainsworths' negligence claims against HP:* Question Nos. 1 (proximate cause), 2 (apportionment of liability), 3 (borrowed employee), and 4 and 5 (negligence damages for Mr. Ainsworth and Mrs. Ainsworth, respectively)

The jury found there was negligence and apportioned liability at 73% for HP, 21% for Mr. Ainsworth; 6% for ISS Facility Services, and 0% for Icon/Isolutions (Question Nos. 1 and 2). The jury did not award any damages to Mrs. Ainsworth (Question No. 5), but it awarded Mr. Ainsworth a total of $9,400,450 (Question No. 4). The jury found that Icon/Isolutions and ISS Facility Services workers were the borrowed employees of HP (Question No. 3).

## III. SUMMARY

The Court should grant a new trial for the following reasons:

(A)    The Court abused its discretion in failing to apply the exclusive remedy of the Texas Workers' Compensation Act ("TWCA") to bar Mr. Ainsworth's recovery from his borrowed employer, HP;

(B)    The Court erred by not submitting this matter as a premises liability case;

(C)    The evidence is legally and factually insufficient to support the award of $2,102,200 for past physical pain and mental anguish and the award of $3,500,000 for future physical pain and mental anguish;

(D)    The Court erred by failing to include a jury question on the negligence of Valley Relocation, where its liability was an issue tried by consent, and where Plaintiff proposed a jury question to determine Valley Relocation's liability without objection from HP;

(E)     The Court erred in admitting evidence that HP began using duct tape to secure stabilization plates on HP server racks transported after the accident, and HP was reversibly harmed notwithstanding the Court's limiting instruction;

(F)     The cumulative effect of errors warrants a new trial; and

(G)     HP is entitled to a new trial in the interests of fairness and justice.

In the alternative, HP seeks a remittitur of the past physical pain and mental anguish damages because they are excessive, and the evidence is factually insufficient to support the amount of these damages.

## IV. ARGUMENT

**(A)     The Court abused its discretion in failing to apply the exclusive remedy of the Texas Workers' Compensation Act ("TWCA") to bar Mr. Ainsworth's recovery from his borrowed employer, HP.**

**1.      An employer subscriber under the TWCA is immune from negligence claims made by its employees.**

Section 408.001(a) of the Texas Labor Code provides, in relevant part, that "Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . against the employer . . . for the . . . work-related injury sustained by the employee." TEX. LAB. CODE ANN. § 408.001(a) (Vernon 2006). Under the TWCA, a subscriber employer is protected by the Act's exclusive remedy provision, which bars common-law causes of actions by its injured employees. *See id.* Thus, an employer who pleads and proves TWCA subscriber status is immune from liability for common-law negligence, and the employee's exclusive

remedy for a work-related injury lies within the TWCA. *See id.*; *see also Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 (Tex. 1992) (per curiam) ("Further, we have held that . . . an employer who pleads and proves subscriber status is immune from liability for common-law negligence and the employee's exclusive remedy is under the Act.").

> **2.    Each of an employee's employers may raise the exclusive remedy provision of the TWCA to bar the employee's claims.**

"An employee may have more than one employer within the meaning of the TWCA and each employer may raise the exclusive remedy provision as a bar to the employee's claims." *W. Steel Co. v. Altenburg*, 206 S.W.3d 121, 123 (Tex. 2006) (citing *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 143, 148 (Tex. 2003); *Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 476 (Tex. 2005)). "When there is a question as to whether one is an 'employer' under the TWCA, Texas courts turn to the borrowed servant doctrine." *Phillips v. Am. Elastomer Prods., L.L.C.*, 316 S.W.3d 181, 187 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (citing *Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 595 (Tex. 2000); *Lockett v. HB Zachry Co.*, 285 S.W.3d 63, 75-76 (Tex. App.—Houston [1st Dist.] 2009, no pet.)).

Under the TWCA, a borrowed servant is also an employee for purposes of the statutory bar. The borrowed servant doctrine protects those employers who have the right to control the manner and details of an employee's work. *Thompson v. Travelers Indem. Co. of Rhode Island*, 789 S.W.2d 277, 278 (Tex. 1990) (stating that, when a claim arises under workers' compensation, the test to determine whether a worker is an employee or independent contractor is whether the employer has the right to control the progress,

details, and methods of the employee's work); *see, e.g., Gibson v. Grocers Supply Co., Inc.*, 866 S.W.2d 757, 760 (Tex. App.—Houston [14th Dist.] 1993, no writ); *Esquivel v. Mapelli Meat Packing Co.*, 932 S.W.2d 612, 614 (Tex. App.—San Antonio 1996, writ denied).

### 3. An employer's "right of control" is not synonymous with "actual control."

Plaintiffs argue that the Court's directed verdict on "actual control" is dispositive of which employer has the right of control. But this position misstates the law. Under the right-of-control test, an injured worker is considered the employee of the employer with the *right of control* over the details of the work being performed *at the time of the injury. Phillips v. Am. Elastomer Prods., L.L.C.*, 316 S.W.3d 181, 187 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (emphasis added). It is the existence, not the actual exercise, of the right to control that determines the nature of the relationship. *See Keith v. Blanscett*, 450 S.W.2d 124, 127 (Tex. Civ. App.—El Paso 1969, no writ). The work in a particular case may be of a character which neither requires nor justifies the exercise of the right of control, even though it exists. *Id.* Stated another way, the nature of the work involved, as here, may not require much control or supervision. *See Dougherty v. Gifford*, 826 S.W.2d 668, 678 (Tex. App.—Texarkana 1992, no writ); *Burdick v. Shell Oil Co.*, No. 14-94-01087-CV, 1995 WL 688873, at *2 (Tex. App.—Houston [14th Dist.] 1995, pet. denied) (noting that the nature of employment did not involve direct supervision by either employer as to the details of the work and that the employee's reliance on instruction from both employers demonstrated a fact issue as to right of control).

In *Producers Chemical Co. v. McKay*, 366 S.W.2d 220, 226 (Tex. 1966), the Court explained that in the absence of a contract containing an express provision for right of control, "right of control is necessarily determined as an inference from such facts and circumstances as [1] the nature of the general project, [2] the nature of the work to be performed by the machinery and employees furnished, [3] length of the special employment, [4] type of machinery furnished, [5] acts representing an exercise of actual control, [6] the right to substitute another operator of the machine." The Court also instructed fact finders to consider whose work the employee was performing. *Id.* at 225-26 (citing *Standard Oil Co. v. Anderson*, 212 U.S. 215, 221-22 (1909)). Additional factors that reviewing courts have considered include whether the lent employee possesses the skills of a specialist, and whether the work at issue is within the scope of the general or special employer's regular business. *See Anthony Equip. Corp. v. Irwin Steel Erectors, Inc.*, 115 S.W.3d 191, 200-01 (Tex. App.—Dallas 2003, pet. dism'd); *Carr v. Carroll Co.*, 646 S.W.2d 561, 564 (Tex. App.—Dallas 1982, writ ref'd). Thus, the exercise of actual control is but one of many factors appropriate for a fact finder to consider in determining whether the original employer or borrowing employer possessed the right of control on a particular occasion. Sometimes, one with the right of control will be exercising that right at the time of an incident; at other times that will not be the case.

4. **The evidence supports the jury's finding that Mr. Ainsworth was HP's borrowed employee.**

*Plaintiffs* asked the Court to include a "borrowed employee" question in the charge. *See* Exhibit A, Question 3 (Plaintiff's proposed jury charge as to "borrowed

employee"). Question Number 3 in the Court's charge was as follows:

> On the occasion in question, were the Icon/Isolution and/or ISS Facility Services workers acting as borrowed employees of Hewlett-Packard Company?
>
> One who would otherwise be in the general employment of one employer is a "borrowed employee" of another employer if such other employer or his agents have the right to direct and control the details of the particular work inquired about.
>
> Answer "Yes" or No."
>
> | a. | Icon/Isolutions | Yes |
> | b. | ISS Facility Services | Yes |

*See* Exhibit B (jury charge actually submitted to the jury).

The evidence adduced at trial was more than sufficient to support the jury's finding that Mr. Ainsworth was HP's borrowed employee. James Klehm of Icon/Isolutions testified that HP's Laurie Daniels authorized him to summon ISS workers, including Mr. Ainsworth, to unload server racks from the tractor trailer, a task that neither ISS nor Mr. Ainsworth, as its employee, was responsible for performing pursuant to ISS's contract with HP. Klehm further testified that he lacked the authority to issue such an assignment to ISS employees and likely would not have borrowed them without Daniels' authorization. Mr. Ainsworth stopped performing the maintenance work that ISS, his original employer, was contracted by HP to perform and engaged in the extra-contractual work of unloading the server racks. Indeed, opposing counsel not only conceded but actually emphasized this right throughout trial vis-à-vis the "HP ran the

show" mantra.

As courts have cautioned, the borrowed employee inquiry must be confined to the specific activity in question. The alleged injury-producing activity in this case was the unloading of the server racks. This was a duty entrusted to Ainsworth by HP – not ISS or Icon/Isolutions. Moreover, unloading server racks fell outside the scope of ISS's and Icon/Isolutions' regular business. Mr. Ainsworth was thus performing *HP*'s work. At all times, HP had the right to control the means, manner, scope, and duration of the project. HP furnished the only tools—the dock plate and sheet metal—used to unload the racks. HP initiated and could have replaced or terminated the service of ISS workers, including Mr. Ainsworth, at any time. Moreover, the unloading itself required no specialized skills or knowledge. That the project required no exercise of "actual control," such as direct supervision by HP on the dock itself, is neither necessary nor dispositive of its right to control.

Accordingly, sufficient evidence supports the jury's finding that ISS and, therefore, Mr. Ainsworth were HP's borrowed employees.

5. **Given the jury's finding that Ainsworth, an ISS Facilities Worker, was a "borrowed employee" of HP, the Court abused its discretion in failing to apply the TWCA's exclusive remedy to bar Ainsworth's recovery from HP.**

The jury found that, on the occasion giving rise to Ainsworth's injury, ISS Facility Service workers were "acting as borrowed employees" of HP. It is undisputed both that Ainsworth was an employee of ISS and that HP was a workers' compensation subscriber. Given these circumstances, Ainsworth's recovery must be limited to the exclusive

remedy afforded under the Texas Workers' Compensation Act.

The jury's finding on the "borrowed employee" question cannot be disregarded as immaterial. When a contract between employers expressly assigns the right to control, a court can sometimes dispose of the borrowed employee issue as a matter of law. *Producers Chemical Co. v. McKay*, 366 S.W.2d 220, 226 (Tex. 1963); *Bucyrus-Erie Co. v. Fogle Equip. Corp.*, 712 S.W.2d 204 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd). Yet, even a contractual designation of control does not establish borrowed employee status as a matter of law if the evidence shows the parties acted to the contrary. *Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 (Tex. 1992) (explaining that a contractual provision concerning right of control is "a factor to be considered," but "is not controlling"). When the right of control, as here, is not expressed in a contract between the original and borrowing employer, it *must* be inferred from the facts and circumstances of the employment. *Producers Chemical Co.*, 366 S.W.2d at 226. "As such, the right of control is generally a question of fact." *Esquivel v. Mapelli Meat Packing Co.*, 932 S.W.2d 612, 617 (Tex. App.—San Antonio 1996, writ denied) (Chapa, C.J., dissenting). (citing *Sparger v. Worley Hosp., Inc.*, 547 S.W.2d 582, 583 (Tex. 1977); *see also J.A. Robinson Sons*, 431 S.W.2d 327, 332 (Tex. 1968) (holding that, in light of conflicting testimony, "it was not conclusively established" that one was a borrowed employee and the trial court was "correct in deciding it was for the jury to determine this matter as an issue of fact").

Considering all of the relevant facts and circumstances, the jury in this case reasonably concluded that Mr. Ainsworth was HP's borrowed employee. Because that

conclusion is supported by sufficient evidence, HP is entitled to assert the statutory bar. This Court should vacate its judgment, apply the workers' compensation bar to preclude Mr. Ainsworth's recovery of damages from HP, and enter a take-nothing judgment in favor of HP.

**(B)    The Court erred by not submitting this matter as a premises liability case**

**(1)    Premises liability versus ordinary negligence**

At trial, there was a dispute about whether there was a viable premises liability claim in this case. HP presented evidence in support of a premises liability claim and requested a premises liability question in the jury charge, which the Court rejected. Plaintiffs requested that an ordinary negligence cause of action be submitted to the jury, and the Court submitted that question.

The Court should have submitted a premises liability instruction in this case because a claim that relates to a defect in the condition of real property is a premises defect claim. *State v. Estate of Horton*, 4 S.W.3d 53, 54 (Tex. App.—Tyler 1999, no pet.). "A premises defect is a defect or dangerous condition that arises from a condition on the premises." *Univ. of Tex. Med. Branch at Galveston v. Davidson*, 882 S.W.2d 83, 85 (Tex. App.—Houston [14th Dist.] 1994, no writ). "Real property" has been defined as "'land, and generally whatever is erected or growing upon or affixed to land.'" *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 640 (Tex. 2000) (quoting *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985) (Gonzalez, J., concurring)). "The term 'premises' has been defined as a building or part thereof with its grounds and appurtenances; and 'defect' has been defined as a shortcoming, an imperfection, or the

'want of something necessary for completeness.'" *Laman v. Big Spring State Hosp.*, 970 S.W.2d 670, 672 (Tex. App.—Eastland 1998, pet. denied) (quoting *Billstrom v. Mem'l Med. Ctr.*, 598 S.W.2d 642, 646 (Tex. Civ. App.—Corpus Christi 1980, no writ).

The evidence at trial indicates that Ainsworth's injury could have been caused by the server rack catching on the dock plate, which was attached to the loading dock connected to the HP facility. The problem was at the transition point. This is similar to *Scroggs v. Am. Airlines, Inc.*, 150 S.W.3d 256, 258 (Tex. App.—Dallas 2004, no pet.), in which a passenger was injured after she fell on the metal hinge of a jet bridge while boarding a plane. American filed a motion for summary judgment arguing Scroggs had no evidence to support her premises liability claim, i.e. that (1) the jet bridge or metal hinge was unreasonably dangerous; (2) American had actual or constructive knowledge of an unreasonably dangerous condition; and (3) the condition of the jet bridge caused Scroggs to fall. *Id.* The Court of Appeals found that Scroggs brought forth more than a scintilla of evidence to support a premises liability claim. *Id.* at 261-62. The reviewing court also held that the trial court did not err in granting summary judgment on any negligent activity claim. *Id.* at 262. The court explained that any argument Scroggs raised addressed an alleged condition created by an activity instead of an activity that actually caused injury. *Id.*

**(2)     This is a "nonfeasance" premises liability case, not a malfeasance "negligent activity" premises liability case**

Under Texas law, a person injured on another's property has two potential causes of action against the property owner: (1) a negligence claim for negligent activity on the

premises, and (2) a premises liability claim for an unreasonably dangerous condition on the premises. *E.I. DuPont de Nemours & Co. v. Roye*, No. 14–12–00740–CV, 2014 WL 3908058, at *5 (Tex. App.—Houston [14th Dist.] Aug. 12, 2014, no pet.) (citing *Clayton W. Williams Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997); *Keetch*, 845 S.W.2d at 264). Though both liability theories are based on negligence principles, they are independent theories requiring different elements of proof. *E.I. Dupont*, 2014 WL 3908058, at *5 (citing *Olivo*, 952 S.W.2d at 529).

When the alleged injury is the result of a negligent activity, the injured party must have been injured by, or as a contemporaneous result of, the activity itself. *E.I. Dupont*, 2014 WL 3908058, at *5 (citing *Keetch*, 845 S.W.2d at 264). When the alleged injury is caused by an unsafe or dangerous condition on the premises, the injured party is limited to a premises liability theory. *E.I. Dupont*, 2014 WL 3908058, at *5 (citing *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006); *H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259 (Tex. 1992); *Wyckoff v. George C. Fuller Contracting Co.*, 357 S.W.3d 157, 163–64 (Tex. App.—Dallas 2011, no pet.)). "Negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory, based on the owner's failure to take measures to make the property safe." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010) (citations omitted). One of Plaintiffs' claims was that Mr. Ainsworth was injured by HP's nonfeasance in failing to provide proper facilities for unloading the server rack – this is a nonfeasance-type premises liability claim.

A nonfeasance-type premises liability claim has certain elements a Plaintiff must establish to prevail on such a claim: that a condition on the premises posed an unreasonable risk of harm, the owner knew or should have known of the danger, and the premises owner failed to exercise ordinary care to protect its invitee from the danger, by both failing to adequately warn the invitee of the condition and failing to make the condition reasonably safe. *Double Eagle Resorts, Inc. v. Mott*, 216 S.W.3d 890, 895 (Tex. App.—Beaumont 2007, no pet.). HP's requested jury instruction included these elements.

This is not a negligent activity case because HP's last activity with respect to the server racks did not occur contemporaneously with, or even in the vicinity of, Mr. Ainsworth's accident and did not occur as a result of an affirmative act by HP. HP's last activity concerning the server racks occurred when HP's Laurie Daniels authorized James Klehm (of Icon/Isolutions) to use ISS personnel (i.e., Mr. Ainsworth) to unload the server racks from the truck. This authorization occurred well in advance of, and was thus removed in time from, Mr. Ainsworth's accident. The accident occurred after Mr. Ainsworth had already unloaded server racks from one truck and when he was beginning to unload the second truck. Moreover, it was undisputed that there were no HP employees at the loading dock at the time of the accident. HP simply had no presence during the unloading operation.

The evidence in this case supports a nonfeasance premises liability claim. Plaintiffs allege that Mr. Ainsworth's injury occurred because the stabilization plate slid out of the server rack while he was moving it and caught on the dock plate. The dock plate is a mechanism attached to the loading dock that is lowered onto the trailer and

allows the unloading of the trailer without negotiating any gaps. The evidence adduced at trial shows that the server rack caught at the dock plate.

Multiple witnesses, including Mr. Ainsworth, testified that the transition was the problem point where the accident occurred. Mr. Ainsworth testified that the stabilization plate slid out of the rack and caught on the dock plate.

Bryan Counts, an Icon/Isolutions employee, testified that he encountered difficulty moving the heavier four caster-wheel server racks (as here) at the lip of the truck, where the truck meets the dock plate. Because of this, he testified, the workers would put an external piece of metal over the dock plate, where it laid in the truck, to make the transition point more horizontal. He testified that, otherwise, the wheel may catch.

James Klehm testified that, after the accident, he saw the server rack on top of Mr. Ainsworth when Mr. Ainsworth was on the dock plate (which gets placed into the truck from the loading dock). He further testified that Mr. Ainsworth was at the point where he was transitioning out of the trailer and onto the dock plate. Mr. Klehm testified that a likely scenario was that the server rack's wheels got caught going across the dock plate.

David Twidell, an ISS employee, testified that the server rack tipped or began to tip as the transition took place from the truck to the dock plate. He created a drawing showing that the server rack tipped over at the transition point. *See* Exhibit C.

Bryan Counts recounted that, after the accident, the bottom of the server rack (which was laying on Mr. Ainsworth) was very close to the transition point. Like Mr. Twidell, Mr. Counts created a drawing showing where the server rack tipped over in relation to the transition point. *See* Exhibit D. Mr. Counts believed the server rack tipped

over as a result of Mr. Ainsworth moving the rack over the threshold because, for any rack he ever moved off a trailer, the threshold was the only issue he experienced, and moving a heavy server rack with four wheels over the threshold was the most difficult part.

**(3) The Court's error in not including the premises liability instruction was harmful**

The Court erred in rejecting HP's premises liability submission alongside the negligence question because evidence presented at trial indicates that Mr. Ainsworth's injuries could have been caused solely by a premises defect. That error was harmful because the jury could have disbelieved all of Plaintiffs' other claims about what HP did wrong (the claims that sound in general negligence) and believed that the only thing HP did wrong was fail to provide adequate facilities (which is a premises claim). If that occurred, then the jury analyzed a premises liability claim under a less burdensome negligence instruction. The jury may have found that HP's failure to provide adequate facilities was negligent, but without the premises liability instruction, it did not consider the additional requirements for a premises liability claim (such as knowledge of the condition). In light of the additional requirements for a premises liability claim, the jury might have answered "no" to a premises-specific question.

Because the great weight and preponderance of the evidence shows that this was a premises defect, the failure to submit the enhanced premises liability charge to the jury was not merely a technical failure, but a material failure to require Plaintiffs to meet the established elements of proof. Accordingly, the jury's finding that HP was negligent is

immaterial and cannot support a judgment against HP. *See Se. Pipe Line Co., Inc. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1999) (stating that jury finding on a question that should not have been submitted is immaterial and may be disregarded).

**(C) The evidence is legally and factually insufficient to support the award of $2,102,200 for past physical pain and mental anguish or the award of $3,500,000 for future physical pain and mental anguish**

There was legally and factually insufficient evidence adduced at trial to support the amount of the awards for past physical pain and mental anguish, $2,102,200, and future physical pain and mental anguish, $3,500,000. We only have the arguments of Plaintiffs' counsel, which are no evidence at all.

To help the jury quantify damages for Mr. Ainsworth's round-the-clock pain, Plaintiffs' counsel presented an unsupported formula to the jury. Plaintiffs' counsel argued that Mr. Ainsworth experienced, and will continue to experience, physical pain 24 hours a day, 365 days per year. Plaintiffs' counsel argued that one could go to the dentist and receive an injection of Novocaine to eliminate pain for one hour at a cost of $40. Plaintiffs' counsel suggested a figure of $10 to obtain pain relief after the neck surgery because Mr. Ainsworth then suffered less pain.

There is no evidence that Mr. Ainsworth was in physical pain 24 hours a day before or after his neck surgery; there was no evidence that he consciously experienced pain while he was sleeping, for example. In Texas, only pain consciously suffered and experienced is compensable. *S. Pac. Transp. Co. v. Luna*, 730 S.W.2d 36, 38 (Tex. App.—Corpus Christi 1987, no writ). There is no evidence to even suggest that Mr.

Ainsworth's damages could be fairly quantified based upon or modeled after a theoretical injection of Novocaine in a dental setting. There is absolutely no evidence that an injection of Novocaine was necessary to relieve Mr. Ainsworth's pain, that an injection of Novocaine costs $40 or that you can purchase or obtain $10 worth of Novocaine, or that $40 worth of Novocaine, for example, would suppress pain for only one hour. Simply put, there is no evidence to support Plaintiffs' formula for eliminating or diminishing Mr. Ainsworth's pain.

Similarly, there is no evidence Mr. Ainsworth suffered mental anguish 24 hours a day, 365 days a year; there is no evidence that he consciously experienced mental anguish while he was sleeping, for example. As noted above, in Texas, only pain consciously suffered and experienced is compensable. *Id.* There is no evidence of the cost to relieve or diminish Mr. Ainsworth's mental anguish.

Further, Mr. Ainsworth underwent back surgery in April of 2014. An expert for the Ainsworths testified that she could not accurately assess Mr. Ainsworth's prognosis until a *full year* after his back surgery had elapsed. Given the uncertainty of Mr. Ainsworth's improvement, it was particularly contemptible for Plaintiffs' counsel to suggest a standard, unsupported figure of $10 per hour for pain relief for the rest of Mr. Ainsworth's life.

The argument of Plaintiffs' counsel is not evidence. Plaintiffs' counsel simply conjured an ill-fitting pain-relief formula from thin air. The evidence is legally and factually insufficient to support awards of $2,102,200 and $3,500,000 for past physical pain and mental anguish and future physical pain and mental anguish, respectively.

When determining the appropriateness of a jury's damage award, reviewing courts frequently consider amounts that have been awarded in roughly comparable cases. The $5,602,200 damage award for past and future physical pain and mental anguish in this case is excessive in comparison to similar awards affirmed on appeal. HP's research has revealed only three final Texas appellate decisions in non-fatal personal injury cases affirming awards for physical pain and mental anguish that exceed the award in this case. *See Stewart & Stevenson, LLC v. Foret*, No. 01-11-01032-CV, 2013 WL 4337319, at *11-12 (Tex. App.—Houston [1st Dist.] Aug. 15, 2013, no pet.) ($6 million for past and future pain and mental anguish to individual who suffered from traumatic brain syndrome and other permanent injuries after 40 to 60-foot fall); *General Motors Corp. v. Burry*, 203 S.W.3d 514, 524, 551 (Tex. App.—Ft. Worth 2006, pet. denied) ($15 million for past and future pain and mental anguish to one who was severely injured and brain-damaged after a collision with an 18-wheeler); *Olin Corp. v. Smith*, 990 S.W.2d 789 (Tex. App.—Austin 1999, pet. denied) ($5.58 million for an undivided award encompassing past and future pain and mental anguish, disfigurement, and physical disability, to a minor whose injuries, which required amputation of a leg, were found to have been caused by defective ammunition). In this case, Mr. Ainsworth's alleged injuries do not rise to the level of severe brain damage; moreover, Plaintiffs' own expert testified that she could not accurately assess whether Mr. Ainsworth would suffer any major, permanent harm until a full year after his back surgery. The evidence presented at trial simply does not support an award greater than all but three other injured persons in all Texas case law.

**(D)** **The Court erred by failing to include a jury question on the negligence of Valley Relocation, where its liability was an issue tried by consent, and where Plaintiff proposed a jury question to determine Valley Relocation's liability without objection from HP**

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." TEX. R. CIV. P. 67. To determine whether an issue was tried by consent, the Court must examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *See Sage Street Assoc. v. Northdale Constr. Co*, 863 S.W.2d 438, 446 (Tex. 1993) (citing *Wendell v. Cent. Power & Light Co.*, 677 S.W.2d 610, 618 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.)); *see also Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009).

Evidence that Valley Relocation's liability was tried is evident from the conflicting positions the Ainsworths and HP advanced at trial on this issue. HP argued, and presented evidence, that it hired Valley Relocation to package the server rack at issue for transport and that any failures in that packaging should, therefore, be attributed to Valley Relocation. The Ainsworths, however, argued that HP was responsible for the server rack not being properly packaged because HP failed to provide Valley Relocation a copy of the user manual and, thus, failed to ensure that Valley Relocation could comply with the user manual's packaging instructions. These instructions required that a server rack be emptied before it is shipped (it was full in this case), and that the server rack be palletized and wrapped before shipping. HP argued the manual did not apply, however, as it only addressed *empty* server racks. Along those lines, Plaintiffs' expert testified that HP

should have removed all of the components from the server racks so it would be "empty," and then HP should have crated it. The Ainsworths argued that if these steps had been taken, the stabilization plate would not have slid out and caused the server rack to tip over and that the server rack otherwise would not have been able to tip over onto Mr. Ainsworth.

Valley Relocation's liability was also implicated, for example, when the parties took conflicting positions on whether HP had control of the packaging. Specifically, the Ainsworths sought to introduce evidence of a subsequent remedial measure (the post-accident practice of placing duct tape over the stabilization plate for shipping, which HP initiated) to show that HP, and not Valley Relocation, controlled how the server racks were packaged. HP argued that it was not responsible for the packaging precisely because it hired a professional company whose business it was to package things, i.e., Valley Relocation.

Here, both HP and the Ainsworths presented evidence at trial to establish or controvert Valley Relocation's liability. It is clear that all parties understood this issue was contested. The Ainsworths, despite Valley Relocation not having been designated a responsible third party, apparently believed the issue was tried by consent because they tendered a proposed jury charge to the Court which sought to have the STI/Valley Relocation liability determined. HP did not object. Further evidence that Valley Relocations' liability was tried comes from the jury itself; during deliberations, the jury actually asked the Court why Valley Relocation was not included in the charge. *See* Exhibit E.

The Court erred in failing to include Valley Relocation on the jury charge, and that error deprived HP of its right to have the jury apportion responsibility to another party, which significantly and prejudicially increased the amount of damages awarded against HP.

**(E)  The Court erred in admitting evidence that HP began using duct tape to secure stabilization plates on HP server racks transported after the accident, and HP was reversibly harmed notwithstanding the Court's limiting instruction**

As indicated above, and over HP's objection, the Court admitted evidence of a subsequent remedial measure – that duct tape was placed over server racks' stabilization plates to hold them in place during transport. Texas Rule of Evidence 407(a) provides that such evidence is inadmissible:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent remedial measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction.

TEX. R. EVID. 407(a).

The Court provided the jury with a limiting instruction advising that the evidence of duct tape being placed over the stabilization plate was being admitted solely for the purpose of demonstrating HP's control over certain aspects of the server shipping process. The Court instructed the jury not to consider that evidence as proof of negligence or liability on HP's part.

This limiting instruction was insufficient. In fact, there could have been no limiting instruction sufficient to remove the severe prejudice that evidence of the

subsequent remedial measure had on the jury. Mr. Ainsworth emphasized throughout the trial that his injury was directly caused by the stabilization plate sliding out while he was moving the server rack. With this emblazoned in the jurors' minds, it would have been impossible for the jurors to not be persuaded and inflamed by the knowledge that duct tape was routinely placed over stabilization plates *after the accident*, notwithstanding the limiting instruction. Plaintiffs' counsel, who tore off a length of duct tape and showed it to the jury, even argued that a six-inch piece of duct tape would have completely prevented this accident from occurring. There can be no doubt that the jury factored this image and information into their decision to find HP liable and to award such excessive, almost punitive damages.

Given the inevitable, reversible harm HP faced in the wake of this information being communicated to the jury, this Court should grant HP a new trial.

**(F)    The cumulative effect of errors warrants a new trial**

HP is entitled to a new trial because of the cumulative effect of the numerous errors, even if no single error is sufficient to warrant a new trial. *See Univ. of Tex. at Austin v. Hinton*, 822 S.W.2d 197, 205 (Tex. App.—Austin 1991, no writ) ("A reviewing court may reverse a lower-court judgment under the cumulative-error doctrine when the record shows a number of instances of error, 'no one instance being sufficient to call for a reversal, yet all the instances taken together may do so.'") (quoting *Sproles Motor Freight Lines, Inc. v. Long*, 140 Tex. 494, 168 S.W.2d 642, 645 (1943)).

"The supreme court has long recognized the doctrine of cumulative error." *Hinton*,

822 S.W.2d at 205 (citing *Smerke v. Office Equip. Co.*, 138 Tex. 236, 158 S.W.2d 302, 305 (1941); *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 840 (Tex. 1979)); *see also Eloise Bauer & Assoc. v. Electronic Realty Assoc, Inc.*, 621 S.W.2d 200, 205 (Tex. App.—Texarkana 1981, writ ref'd n.r.e.) ("The various errors in the trial are the type which lead to the rendition of an improper verdict. Therefore, we reverse the judgment of the trial court. We remand this case for a new trial in the interests of justice.").

**(G)    HP is entitled to a new trial in the interests of fairness and justice**

The Court has broad discretion to order a new trial in the interest of fairness and justice. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex. 1985). The Texas Rules of Civil Procedure afford a trial court considerable discretion to set aside a jury verdict, even on its own motion. *See* TEX. R. CIV. P. 320, 326, 327. Given the prejudicial errors that HP faced at trial, a new trial in the interest of fairness and justice is appropriate and within the Court's discretion, so long as findings in support are made. *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 211-13 (Tex. 2009) (orig. proceeding). The Texas Supreme Court has mandated that a trial court's stated reasons for granting a new trial must be legally appropriate and must be specific enough to show that the trial court derived its articulated reasons for granting a new trial from the particular facts and circumstances of the case at hand. *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688–89 (Tex. 2012) (orig. proceeding).

## V. REMITTITUR

Finally, and in the alternative, HP requests that the Court exercise its inherent

power to order remittitur of the past and future physical pain and mental anguish damages. The damages awarded by the jury are excessive. A motion for new trial is required to preserve for appeal the complaint of "inadequacy or excessiveness of the damages found by the jury." TEX. R. CIV. P. 324(b)(4).

"New trials may be granted . . . when the damages are 'manifestly' too small or too large." TEX. R. CIV. P. 320. While the determination of suitable compensation for physical pain and mental anguish is generally within the province of the jury, the jury's discretion is not limitless. *Farmers & Merchants State Bank v. Ferguson,* 605 S.W.2d 320, 327 (Tex. Civ. App.—Fort Worth 1980), *reformed and aff'd,* 617 S.W.2d 918 (Tex. 1981) ("Where the law furnishes no specific guide or rule in measuring damages, the amount of the damages is largely in the discretion of the jury."). "There is hardly a hitching post to which jurors may tie in evaluating pain in terms of money, yet, they may not roam too far." *Sharpe v. Munoz,* 256 S.W.2d 890, 893 (Tex. Civ. App.—San Antonio 1953, writ ref'd. n.r.e.). Where the award is flagrantly outrageous, extravagant, and so excessive as to shock the judicial conscience, the Court can – and should – intervene. *See Am. Bank of Waco v. Waco Airmotive, Inc.,* 818 S.W.2d 163, 175 (Tex. App.—Waco 1991, writ denied).

"Factual sufficiency is the sole remittitur standard for actual damages." *Pope v. Moore,* 711 S.W.2d 622, 624 (Tex. 1986). In an excessive damage challenge, the Court must weigh all of the evidence in the case, not just the evidence that supports the jury verdict. *Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406-07 (Tex. 1998).

If this Court declines to grant a new trial, then the judgment should be remitted, in part, because the damages awarded for past and future physical pain and mental anguish are excessive, considering all the evidence, and the evidence is factually insufficient to support the amounts awarded. HP incorporates herein its challenges to the sufficiency of the evidence to support the damages awarded to Plaintiff, as asserted above, and objects that the jury's damages awards are unfairly, prejudicially, and unconstitutionally excessive.

## VIII. CONCLUSION

For the foregoing reasons, HP respectfully requests that the Court grant this motion, vacate and set aside the judgment signed in this cause on November 19, 2014, and order that the cause be returned to the Court's docket for disposition on the merits. In the alternative, HP requests that the Court order a remittitur of the excessive past and future physical pain and mental anguish damages. Additionally, HP requests all other relief to which it may be justly entitled at law or in equity.

Respectfully submitted,

HEARD & MEDACK, P.C.

By: /s/ *David W. Medack*

David W. Medack
Texas Bar No. 13892950
Email: dmedack@heardmedackpc.com
Mary L. Graham
Texas Bar No. 24007260
Email: mgraham@heardmedackpc.com
9494 Southwest Freeway, Suite 700
Houston, Texas 77074
(713) 772-6400 - Telephone

F:/1854/Pleadings/Mtn for New Trial          25

(713) 772-6495 - Facsimile
ATTORNEYS FOR DEFENDANT
HEWLETT-PACKARD COMPANY

## CERTIFICATE OF SERVICE

Pursuant to Rule 21a of the Texas Rules of Civil Procedure, I hereby certify that a true and correct copy of the foregoing has been served upon all known counsel of record, by facsimile, hand delivery, U.S. First Class Mail and/or certified mail, return receipt requested, on this the 18th day of December, 2014.

**Via Fax: (713) 864-4671**
Ryan T. Hand
Lorance & Thompson, P.C.
2900 North Loop West, Suite 500
Houston, Texas 77092

/s/ David W. Medack
David W. Medack

```
JURN7 (NSA#)     JUSTICE INFORMATION MANAGEMENT SYSTEM     FEB 05, 2015(C1)
INT6510                   CIVIL CASE INTAKE               OPT: _____  -  INT
                        GENERAL PARTY INQUIRY             PAGE:   1  -    1

CASE NUM: 201221132__ PJN> __  TRANS NUM: _____ CURRENT COURT: 270 PUB? _
CASE TYPE: DAMAGES (OTH)                    CASE STATUS: DISPOSED (FINAL)
STYLE: AINSWORTH, CHRISTOPHER          VS HEWLETT-PACKARD COMPANY
========================================================================
                       **** INACTIVE PARTIES ****
  PJN   PER/CONN COC  BAR         PERSON NAME           PTY   ASSOC. ATTY
  NUM    NUMBER                                         STAT
_     00004-0001 AGT         HEWLETT-PACKARD COMPANY (DELAW
_     00003-0001 PLT 24012777 AINSWORTH, DANIELLE              HAND, RYAN TH
_     00002-0001 DEF 13892950 HEWLETT-PACKARD COMPANY          MEDACK, DAVID
_     00001-0001 PLT 24012777 AINSWORTH, CHRISTOPHER           HAND, RYAN TH




==> (4) CONNECTION(S) FOUND
1=ACTIVE      2=ATY. INQ.   3=ACT.ENTRY   4=ISS. SERV.  5=DOC. INQ.
6=CASE INQ.   7=BACKWARD    8=FORWARD     9=PTY. ADDR.  10=REFRESH   11=HELP
```